IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

OCTOBER 1996 SESSION

FILED

March 4, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 03C01-9512-CC-00406 |
| | * | |
| Appellee, | * | BRADLEY COUNTY |
| VS. | * | |
| | * | Hon. Mayo L. Mashburn, Judge |
| RICK J. GOULTRIE, | * | |
| | * | (Public Intoxication and |
| Appellant. | * | Possession of Marijuana) |
| | * | |

For Appellant:

A. Wayne Carter
Assistant Public Defender
P.0. Box 1453
Cleveland, TN  37364-1453

For Appellee:

Charles W. Burson
Attorney General & Reporter

Hunt Brown
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN  37243-0493

Joe Rehyansky
Assistant District Attorney General
P.O. Box 1351
Cleveland, TN  37364-1351

OPINION FILED: _____

AFFIRMED

GARY R. WADE, JUDGE

## OPINION

After a jury trial, the defendant, Rick Goultrie, was convicted of possession of marijuana and public intoxication. The trial court imposed consecutive sentences of eleven months twenty-nine days for the possession conviction and thirty days for the public intoxication conviction. The defendant was required to serve seventy-five percent of the sentences in the county jail.

In addition to his challenge to the sufficiency of the evidence, the defendant presents the following issues for appellate review:

(1) whether the trial judge erred by denying a motion to recuse;

(2) whether the chain of custody for the marijuana evidence was sufficiently established; and

(3) whether the sentence was excessive.

We affirm the judgment of the trial court.

At about 3:30 A.M. on December 10th, 1994, Patrolman Steve Tyson of the Cleveland Police Department noticed a woman talking to someone inside a parked car. The car was on the wrong side of the street and the motor was running. Mindful of recent complaints about drug trafficking in the area, Officer Tyson approached the vehicle; he could smell alcohol through the open windows of the car. After talking with the driver, Danny McCutchen, Officer Tyson determined that he had been drinking, gave him a field sobriety test, and then placed him under arrest for driving under the influence (DUI).

At that point, Officer Tyson's ride-along student pointed out that the defendant, who was seated in the front passenger seat, was dumping a green leafy

2

material out of a cigarette package, where it was stored between the paper package and the cellophane wrapper. Officer Tyson determined that the substance was marijuana when the defendant stepped out of the car. Officer Tyson removed the cigarette package from his grip and placed it on the roof of the car. When the defendant was handcuffed and in the car, Officer Tyson picked up the cigarette package and placed it into his patrol car.

The defendant refused to take any blood or breath alcohol test. Officer Tyson sealed the cigarette package in an envelope, initialed it, and turned it over to his supervisor. His supervisor dropped the envelope into the evidence room drop slot. Later, an evidence officer unlocked the room, removed all of the secured evidence envelopes, and delivered them to the TBI crime lab in Chattanooga. This was standard procedure. On the day of trial, Officer Tyson picked up the envelope from the evidence officer and confirmed his initials.

Defense witness Tracy Manus, in the company of the defendant and McCutchen on the night of the arrest, testified that neither she nor her companions drank that night. She contended that the cigarette package was never in the possession of the defendant.

McCutchen admitted that he had had "too much" to drink on the night of his arrest. He testified that he saw Officer Tyson pick something up off the ground, but was unable to see what it was.

3

While acknowledging a "buzz" from beer, the defendant strongly denied that he was intoxicated or had trouble standing. He also denied ownership of the marijuana.

On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as triers of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983); Tenn. R. App. P. 13(e).

Public intoxication occurs when a person "appears in a public place under the influence" of an "intoxicating substance to the degree that: (1) The offender may be endangered; (2) There is endangerment to other persons or property; or (3) The offender unreasonably annoys people in the vicinity." Tenn. Code. Ann. § 39-17-310(a). Officer Tyson testified that the defendant had a strong smell of alcohol, had a glazed look in his eye, was unable to keep his balance while standing, and responded slowly to commands. The defendant was unable to exit the car or stand without help. Officer Tyson, who knew the defendant from prior encounters, had seen his sober behavior and believed that the defendant was a danger to himself because of his level of intoxication.

In our view, this was adequate evidence that the defendant was guilty

4

of public intoxication.

Simple possession is defined as "knowingly possess[ing] ... a controlled substance unless the substance was obtained" with a valid prescription. Tenn. Code Ann. § 39-17-418(a). Marijuana is, of course, a controlled substance. Officer Tyson testified that the defendant was holding a cigarette package with a green leafy substance tucked inside. The floorboard of the passenger's side of the car was littered with the same green substance. Having years of experience with the substance, the officer recognized it by the look and smell. TBI laboratory tests confirmed that the substance was marijuana. Clearly, the evidence is sufficient to support a conviction of possession of marijuana.

I

The defendant argues that the trial judge should have granted his motion for recusal. Because he had appeared before the trial judge on a number of previous charges, the defendant claims the judge lacked impartially. The defendant insists that the judge had always ruled against him and imposed lengthy sentences.

Whether recusal is necessary rests within the discretion of the trial court. Caruthers v. State, 814 S.W.2d 64, 67 (Tenn. Crim. App. 1991). A judge should grant a motion for recusal whenever his or her "impartiality might reasonably be questioned." Code of Judicial Conduct, Canon 3(C); Tenn. Sup. Ct. R. 10; State v. Jimmy D. Dillingham, No. 03C01-9110-CR-00319 (Tenn. Crim. App., at Knoxville, February 3, 1993). This court will not interfere with the trial court's discretion unless clear abuse appears on the face of the record. Caruthers, 814 S.W.2d at 67.

Here, the record simply does not support the defendant's claims of prejudice. There was no proof whatsoever that the trial judge had acted impartially

5

in any of the prior cases or had made comments in this case indicative of bias.


**II**

Next, the defendant argues that the trial court erred by allowing as evidence the marijuana in the cellophane wrapper and the report from the TBI crime lab analyzing the substance. He insists the state failed to adequately establish the chain of custody.


The issue of the chain of custody was not made in the motion for a new trial. "[I]n all cases tried by a jury, no issue presented for review [to an appellate court] shall be predicated upon error in the admission or exclusion of evidence ... unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." Tenn. R. App. P. 3(e). Moreover, there is no transcript of the hearing on the motion. It is the duty of the appellant to prepare a record which conveys a fair, accurate, and complete account of what transpired in the trial court with respect to the issues which form the basis of the appeal. Tenn. R. App. P. 24(b); State v. Rhoden, 739 S.W.2d 6 (Tenn. Crim. App. 1987); State v. Miller, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987). Generally, this court is precluded from addressing an issue on appeal when the record fails to include relevant documents. See State v. Bennett, 798 S.W.2d 783 (Tenn. Crim. App. 1990); Tenn. R. App. P. 24. Because the hearing on the motion for new trial is not in the record, the issue has been waived.

6

Finally, the defendant argues that the trial court imposed excessive sentences. He also contends that the trial court erred by imposing consecutive sentences.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (l) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In misdemeanor sentencing, a separate sentencing hearing is not mandatory but the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. Tenn. Code Ann. § 40-35-302(a). Misdemeanor sentences must be specific and in accordance with the principles, purpose, and goals of the Criminal Sentencing Reform Act of

1989.  Tenn. Code Ann. §§ 40-35-104, -117, -302; State v. Palmer, 902 S.W.2d 391, 393 (Tenn. 1995).  The misdemeanor offender must be sentenced to an authorized determinant sentence with a percentage of that sentence designated for eligibility for rehabilitative programs.  Generally, a percentage of not greater than 75% of the sentence should be fixed for a misdemeanor offender; however, a DUI offender may be required to serve the full 100% of his sentence.  Palmer, 902 S.W.2d at 393-94.  In determining the percentage of the sentence, the court must consider enhancement and mitigating factors as well as the legislative purposes and principles related to sentencing.  Id.

Upon service of that percentage, the administrative agency governing the rehabilitative programs determines which among the lawful programs available is appropriate.  The trial court retains the authority to place the defendant on probation either immediately or after a period of periodic or continuous confinement.  Tenn. Code Ann. § 40-35-302(e).  The legislature has encouraged courts to consider public or private agencies for probation supervision prior to directing supervision by the Department of Correction.  Tenn. Code Ann. § 40-35-302(f).  The governing statute is designed to provide the trial court with continuing jurisdiction in misdemeanor cases and a wide latitude of flexibility.  The misdemeanant, unlike the felon, is not entitled to the presumption of a minimum sentence.  State v. Creasy, 885 S.W.2d 829 (Tenn. Crim. App. 1994).

Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976).  In that case our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications.  Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the

court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution: "[C]onsecutive sentences should not routinely be imposed ... and ... the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved." Taylor, 739 S.W.2d at 230. The Sentencing Commission Comments adopted the cautionary language. Tenn. Code Ann. § 40-35-115. The 1989 Act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria[1] exist:

> (1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

---

[1]The first four criteria are found in Gray. A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

9

(6)  The defendant is sentenced for an offense
committed while on probation;

(7)  The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).


In State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995), our high court held that consecutive sentences cannot be required "unless the terms reasonably relate to the severity of the offenses committed and are necessary in order to protect the public (society) from further criminal acts by those persons who resort to aggravated criminal conduct."  The Wilkerson decision, which modified somewhat the strict factual guidelines for consecutive sentencing adopted in State v. Woods, 814 S.W.2d 378, 380 (Tenn. Crim. App. 1991), described sentencing as a "human process that neither can nor should be reduced to a set of fixed and mechanical rules."  Wilkerson, 905 S.W.2d at 938.


To summarize, in addition to fitting into one of the seven statutorily mandated classifications, the record must also establish that the aggregate sentence reasonably relates to the severity of the offenses and the total sentence is necessary for the protection of the public from further crimes by the defendants. Wilkerson, 905 S.W.2d at 938; Gray, 538 S.W.2d at 392.  The record must show that the sentencing principles and all relevant facts and circumstances were considered before the presumption of correctness applies.

In this case, the trial court found one mitigating factor, that the "offense neither caused or threatened serious bodily injury." The trial court also found two enhancement factors: the defendant had a previous criminal record and the defendant had a "previous history of unwillingness to comply with the conditions with a sentence involving release into the community." After weighing the two enhancement factors against the one mitigating factor, the trial court sentenced the defendant to very near the maximum possible: thirty days for public intoxication and eleven months twenty-nine days for possession of marijuana.

The defendant had an extensive criminal record: two felony convictions for larceny and burglary, three convictions for DUI, and two convictions for driving on a revoked license, for a total of seven prior convictions. In that regard, the defendant qualifies as "an offender whose record of criminal activity is extensive." Tenn. Code Ann. § 40-35-115(b)(2). The consecutive sentencing was appropriate. In a separate case, the defendant had appealed DUI and driving on a revoked license convictions to this court. At the time of sentencing in this present case, the defendant's convictions had been confirmed by this court; yet he continued his criminal activity. Thus, enhanced sentences were suitable. In our view, the trial judge imposed appropriate sentences. The aggregate sentences, in light of his prior record, bear a reasonable relationship to the seriousness of the crimes.

Accordingly, the judgment of the trial court is affirmed.

_____
Gary R. Wade, Judge

11

CONCUR:

_____
David H. Welles, Judge


_____
Jerry L. Smith, Judge